Vanguard Pai Lung, LLC v. Moody, 2020 NCBC 56.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

VANGUARD PAI LUNG, LLC; and
PAI LUNG MACHINERY MILL CO.
LTD.,

     Plaintiffs and Counterclaim
Defendants,

v.

WILLIAM MOODY; NOREEN
MOODY; MARY KATE MOODY;
MICHAEL MOODY; NOVA
TRADING USA, INC.; and NOVA
WINGATE HOLDINGS, LLC,

     Defendants,

and

WILLIAM MOODY; NOVA
TRADING USA, INC.; and NOVA
WINGATE HOLDINGS, LLC,

     Counterclaim Plaintiffs.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 13891

**ORDER AND OPINION ON WILLIAM
MOODY'S MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS**

1.    William Moody served as president and CEO of Vanguard Pai Lung, LLC ("Vanguard") for nearly a decade. Claiming that Moody had siphoned money and assets, the company fired him. Then it sued him, three members of his family, and two entities that he owns. Moody denies the allegations. He has also demanded advancement of his legal fees and expenses, citing the indemnification and advancement rights given to Vanguard's managers in its operating agreement. Vanguard has refused.

2.    This decision addresses a single issue: whether Moody is entitled to judgment on the pleadings for his advancement counterclaim. As to liability, the

answer is yes. The amount due for expenses incurred by Moody to date and the manner in which Vanguard must pay his expenses going forward will require further proceedings.

*Womble Bond Dickson (US) LLP, by Matthew F. Tilley, Russ Ferguson, and Patrick G. Spaugh, and Perkins Coie LLP, by John P. Schnurer, Sean T. Prosser, John D. Esterhay, and Yun (Louise) Lu, for Plaintiffs Vanguard Pai Lung, LLC and Pai Lung Machinery Mill Co. LTD.*

*Johnston, Allison & Hord, P.A., by Patrick E. Kelly, Michael J. Hoefling, and David V. Brennan, for Defendants William Moody, Nova Trading USA, Inc., and Nova Wingate Holdings, LLC.*

*Burns, Gray & Gray, by John T. Burns, for Defendants Noreen Moody, Mary Kate Moody, and Michael Moody.*

Conrad, Judge.

# I.
# BACKGROUND

3. Vanguard, a North Carolina limited liability company, makes and sells high-speed circular knitting machines. When the company was formed in 2009, Moody became president, CEO, and one of five managers. He is still a manager but no longer an officer, having been fired in 2018 as a prelude to this suit.

4. Vanguard's complaint describes a typical, if wide-ranging, case of abuse of executive authority. If the complaint is to be believed, Moody "used his positions as President, CEO, and manager . . . to misappropriate and embezzle funds and property from [Vanguard], and to otherwise enrich himself, his family, [and] friends through numerous self-dealing and illegal activities . . . ." (Compl. ¶ 23, ECF No. 3.) That includes installing six of his children in high-ranking jobs, complete with costly perks and inflated salaries. (*See* Compl. ¶¶ 62, 63, 68, 70, 74, 77, 81, 90, 170.) It also includes allegations that he stole Vanguard's tax refunds, ruined its relationships

with clients and lenders, and cooked up a sweetheart deal to have it rent property from one of his own companies. (*See, e.g.*, Compl. ¶¶ 26, 29, 38, 39, 48, 52, 74–76.) Vanguard presses sixteen claims in all—including fraud, conversion, embezzlement, breach of fiduciary duty, and breach of contract.

5. Moody not only denies these allegations but contends, by counterclaim, that Vanguard must pay for his legal defense. Vanguard's operating agreement gives its managers broad indemnification and advancement rights. The company must indemnify "to the fullest extent now or hereafter permitted by law" any manager who becomes a party to a civil action "by reason of the fact that such person is or was an authorized representative of" the LLC. (Operating Agrmt. § 3.7(a), ECF No. 63.1.) Likewise, it must pay the manager's expenses, including attorney's fees, "in advance of the final disposition" so long as the manager provides an undertaking to repay those sums if not entitled to indemnification when all is said and done. (Operating Agrmt. § 3.7(b).) These rights endure even when Vanguard itself sues and accuses the manager of bad acts. (*See* Operating Agrmt. § 3.7(f).) Moody demanded advancement and provided the required undertaking, yet Vanguard refused. (*See* Defs.' Am. Countercl. Ex. A, ECF No. 59.)

6. The advancement counterclaim is one of twelve being pursued by Moody and his fellow defendants. An earlier opinion describes them in detail. *See Vanguard Pai Lung, LLC v. Moody*, 2019 NCBC LEXIS 39, at *2–7, 25 (N.C. Super. Ct. June 19, 2019) (denying Vanguard's motion to dismiss eight counterclaims, not including the advancement counterclaim). The other counterclaims are relevant here because

Moody believes the right to advancement extends to his affirmative claims for relief as well as his defense of the claims against him. Vanguard has asserted affirmative defenses, including unclean hands and Moody's own alleged breach of the operating agreement. (*See* Pls.' Answer 15, ECF No. 77.)

7. Now that the pleadings are closed, Moody argues that his advancement counterclaim is ripe for adjudication. He asks the Court to enter judgment on the pleadings under Rule 12(c) of the North Carolina Rules of Civil Procedure. (*See* ECF No. 78.) The Court decides the motion with the benefit of full briefing and argument from counsel at a hearing in September 2019.

II.
ANALYSIS

8. In some respects, this dispute presents questions of first impression. Our appellate courts have not addressed advancement beyond a token mention or two. *See* Russell M. Robinson, II, *Robinson on North Carolina Corporation Law* § 18.06 (7th ed. 2019) ["Robinson"]. The most thorough—perhaps the only—discussion of North Carolina law on advancement appears in a recent decision of this Court and draws heavily from Delaware's deep body of law in the area. *See generally Wheeler v. Wheeler*, 2018 NCBC LEXIS 156 (N.C. Super. Ct. Nov. 15, 2018). With so little guidance, it is best to start with an explanation of what advancement is and what purpose it serves.

9. In short, indemnification and advancement are tools used to allocate risk between a corporation or LLC and its leaders. Corporate service can be risky. Deals and decisions made in good faith sometimes go south and, when they do, could result

in legal claims against corporate officials. A zealous legal defense isn't cheap, so the best and brightest might not gamble on corporate service knowing that they would have to bear the cost of any lawsuit arising from that service.

10. Indemnification can alleviate that concern. It is the company's promise to reimburse an official—such as an officer, director, or manager—"for all out of pocket expenses and losses caused by an underlying claim." *Id.* at *26 (quoting *Majkowski v. Am. Imaging Mgmt. Servs., LLC*, 913 A.2d 572, 586 (Del. Ch. 2006)). Of course, companies usually do not—and often by law cannot—indemnify officials for bad-faith conduct. *See, e.g.*, N.C.G.S. § 55-8-51(d). As a result, the right to indemnification may not kick in until the official mounts a successful defense, demonstrating that she acted in good faith. Anyone familiar with complex civil litigation knows that could take a while. For officials who do not have the financial wherewithal to go the distance, indemnification might look like an empty assurance.

11. Advancement provides the immediate relief that indemnification does not. An agreement to advance expenses obligates the company to pay them during the litigation—in other words, before the right to indemnification is established. *See Wheeler*, 2018 NCBC LEXIS 156, at *27. The official, in turn, must agree to pay back what she has received if it later turns out that she is not entitled to indemnification. *See id.* This arrangement "provides corporate officials with immediate interim relief from the personal out-of-pocket financial burden of paying the significant on-going expenses inevitably involved with investigations and legal proceedings." *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 211 (Del. 2005).

12. Long ago, the General Assembly gave North Carolina corporations the power to advance litigation expenses to directors, all to further the public policy of enabling corporations to attract talented leaders. *See* N.C.G.S. §§ 55-8-50, 55-8-53. Although there is no analogous statute for LLCs, silence should not be mistaken for disapproval. Members of LLCs have great leeway to arrange their affairs by contract. *See id.* § 57D-10-01. Without question, "[a]dvances of expenses may . . . be addressed in an operating agreement," just as the members of Vanguard chose to do here. Robinson § 34.04[4].

13. When it works as designed, advancement ensures that company officials have the resources to resist unjustified lawsuits without relieving them of ultimate responsibility for any bad-faith conduct. But for all its virtues, advancement is a tinderbox for ancillary litigation. Few companies, having sued an official for bad behavior, are willing to fund both sides of the lawsuit, even when they've contracted to do so. That often prompts early and accelerated motions practice in which the official seeks summary relief before reaching the merits of the underlying claims. *See, e.g.*, *Radiancy, Inc. v. Azar*, 2006 Del. Ch. LEXIS 13, at *1–4 (Del. Ch. Jan. 23, 2006).

14. This dispute is a good example. Vanguard, after accusing Moody of pervasive disloyalty, has refused to advance his litigation expenses. Moody contends that the Court need not look beyond the pleadings to decide the advancement dispute in his favor. In this posture, the Court must take Vanguard's allegations as true and disregard Moody's contrary allegations. *See Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974). Moody can succeed only if the pleadings "clearly

establish[] that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Carpenter v. Carpenter*, 189 N.C. App. 755, 761, 659 S.E.2d 762, 767 (2008).

## A. "By Reason of the Fact"

15.   The operating agreement confers a broad, mandatory right to advancement on Vanguard's managers, including Moody.  Read together, sections 3.7(a) and (b) put two conditions on advancement: that Moody must have been sued "by reason of the fact" that he was an authorized representative of Vanguard; and that he must provide an undertaking to repay advanced expenses if "ultimately determined" not to be entitled to indemnification.  (Operating Agrmt. §§ 3.7(a), (b).)  Vanguard disputes the first but not the second.

16.   The phrase "by reason of the fact" commonly appears in corporate advancement and indemnification provisions, including those at issue in *Wheeler*.  There, the Court found Delaware law "instructive" when interpreting its meaning.  *Wheeler*, 2018 NCBC LEXIS 156, at *34.  Moody opposes looking to Delaware law, claiming that it conflicts with North Carolina law.  But the only North Carolina case that Moody cites has nothing to do with advancement, comes from a context other than corporate law, and deals with different contract language.  *See CSX Transp., Inc. v. City of Fayetteville*, 247 N.C. App. 517, 525–27, 785 S.E.2d 760, 765–66 (2016).  There is no conflict, and *Wheeler*'s approach is sound.  If the Court is wrong about that, Moody will suffer no harm because he meets the "by reason of the fact" requirement even as it has been interpreted by Delaware's courts.

17. All that the phrase "by reason of the fact" requires is a "nexus" between the underlying claim and the official's corporate capacity. *Wheeler*, 2018 NCBC LEXIS 156, at *34 (quoting *Homestore*, 888 A.2d at 213). For close calls, "the line between being sued in one's personal capacity and one's corporate capacity generally is drawn in favor of advancement . . . ." *Holley v. Nipro Diagnostics, Inc.*, 2014 Del. Ch. LEXIS 268, at *26 (Del. Ch. Dec. 23, 2014). It is enough to show that "the corporate powers were used or necessary for the commission of the alleged misconduct," *Paolino v. Mace Sec. Int'l, Inc.*, 985 A.2d 392, 406 (Del. Ch. 2009), or that "the claim depends on a showing that the official breached duties, quintessentially fiduciary duties, he owed to the corporation in that capacity," *Zaman v. Amedeo Holdings, Inc.*, 2008 Del. Ch. LEXIS 60, at *55 (Del. Ch. May 23, 2008); *see also NAMS Holdings, LLC v. Reece*, 2018 NCBC LEXIS 32, at *8 (N.C. Super. Ct. Apr. 16, 2018).

18. In some cases, artful pleading might obscure the nature of the claims and underlying conduct. Not so here. Vanguard's complaint is blunt: it alleges that Moody "used his positions" as manager and officer to favor his family and friends, steal from the company, and hide his wrongdoing. (Compl. ¶¶ 23, 24; *see also* Compl. ¶¶ 27, 29, 37, 62.) By doing so, it claims, Moody breached his fiduciary duties. (*See* Compl. ¶ 120.) The nexus is plain as day. *See Wheeler*, 2018 NCBC LEXIS 156, at *36–37 (concluding that "alleged conduct as President" in "breach of officer's and director's duties" met nexus requirement).

19. Vanguard barely mentions its claim for breach of fiduciary duty, apparently recognizing that it is a lost cause. (*See* Opp'n 15, ECF No. 84.) Advocating "a claim-

by-claim analysis," it argues that the other claims lack the required nexus. (Opp'n 13.) It is certainly possible for some claims to meet the nexus requirement and others not. If so, the right to advancement is limited to the qualifying claims. *See, e.g., Weaver v. ZeniMax Media, Inc.*, 2004 Del. Ch. LEXIS 10, at *11–14 (Del. Ch. Jan. 30, 2014).

20. But when all the claims rest on the same factual allegations, as they do here, there is no reason to treat one claim differently than any other. Vanguard concedes that its claims for conversion, constructive fraud, embezzlement, unfair or deceptive trade practices, unjust enrichment, claim and delivery, and civil conspiracy depend on the same conduct that underlies its claim for breach of fiduciary duty. (*See* Opp'n 14–18.) The complaint makes clear that the other claims do too, (*see* Compl. ¶ 120), and that Moody "used his positions" to accomplish all of the alleged misconduct, (Compl. ¶¶ 23, 24). In other words, though different legal theories may be at play, all sixteen claims are intertwined and involve "the charge that a senior managerial employee failed to live up to his duties of loyalty and care to the" company. *Reddy v. Elec. Data Sys. Corp.*, 2002 Del. Ch. LEXIS 69, at *20 (Del. Ch. June 18, 2002), *aff'd*, 820 A.2d 371 (Del. 2003).

21. The Court therefore concludes that all claims against Moody arise "by reason of the fact" that he was a manager and officer of Vanguard. *See, e.g., Doran Jones, Inc. v. Per Scholas, Inc.*, 2017 U.S. Dist. LEXIS 67828, at *21 (S.D.N.Y. May 2, 2017) (addressing claims together when based on "the same factual allegations");

*see also Wheeler*, 2018 NCBC LEXIS 156, at *36–37 (same); *Zaman*, 2008 Del. Ch. LEXIS 60, at *104–05 (same).

22. As a result, Moody has met the requirements for advancement. He does not have to show that he also has a right to indemnification, as Vanguard contends. (*See* Opp'n 10–13.) Advancement "is not dependent on the right to indemnification"; it serves the distinct purpose of providing immediate, interim relief. *Homestore*, 888 A.2d at 212; *accord Wheeler*, 2018 NCBC LEXIS 156, at *26. The operating agreement drives home that difference by requiring an undertaking to repay advanced expenses if indemnification is later denied. That requirement would be superfluous if advancement depended on the manager's right to indemnification.

23. It is undisputed that Moody provided the required undertaking. (*See* Defs.' Am. Countercl. Ex. A.) And he is a party here "by reason of the fact" of his service to Vanguard. He has therefore met all the requirements for advancement imposed by the operating agreement.

## B. Affirmative Defenses

24. Next, the Court addresses whether Moody forfeited his right to advancement. Vanguard relies on the general rule of contract law "that if either party to the contract commits a material breach of the contract, the other party should be excused from the obligation to perform further." *Coleman v. Shirlen*, 53 N.C. App. 573, 577–78, 281 S.E.2d 431, 434 (1981). According to Vanguard, Moody breached the operating agreement as early as 2009, thus excusing it from having to advance expenses. (*See* Opp'n 6–10.) And because this is a motion for judgment on the

pleadings, Vanguard contends, the Court must accept its allegations of Moody's breach—and, thus, its affirmative defense—as true. (*See* Opp'n 6.)

25. This is not persuasive. Contracts vary in form and substance. Some promises may be independent of other promises in the same contract. When they are, the "[f]ailure to perform an independent promise does not excuse nonperformance on the part of the other party." *Coleman*, 53 N.C. App. at 578, 281 S.E.2d at 434. Whether promises are dependent or independent turns on the language of the contract, its nature, and the relationship between the parties. *See Williams v. Habul*, 219 N.C. App. 281, 294, 724 S.E.2d 104, 112–13 (2012).

26. Take, for example, forum selection clauses. The promise to sue in a given forum ordinarily does not depend upon performance of the other contract terms. Rather, by choosing a venue for resolving contract disputes, the parties implicitly acknowledge that one or the other might not live up to its end of the bargain. It would be nonsensical to say that the choice of forum becomes unenforceable when a breach occurs. *See, e.g.*, *Monster Daddy, LLC v. Monster Cable Prods., Inc.*, 483 Fed. App'x 831, 835 (4th Cir. 2012) (unpublished) (concluding that forum selection clause was independent and would be "meaningless" if prior breach could render it unenforceable).

27. For similar reasons, Vanguard's obligation to advance expenses to a manager does not depend on faithful performance of the manager's duties. The very purpose of advancement is to allow the manager to defend against allegations of misconduct, even those leveled by Vanguard. (*See* Operating Agrmt. § 3.7(f).) The

obligation is mandatory (Vanguard "shall pay all expenses") and due *before* a decision on the underlying claims ("in advance of the final disposition of such action"). (Operating Agrmt. § 3.7(b).) To say that the right to advancement depends on an ultimate determination of the manager's faithful performance, as Vanguard argues, would eliminate the right altogether, upsetting the parties' allocation of risk.

28. In a footnote, Vanguard points to its allegation that Moody covered up his wrongdoing and argues that his advancement claim is therefore barred by his own unclean hands. (*See* Opp'n 8 n.3.) This argument is equally unpersuasive. The doctrine of unclean hands bars recovery only when the wrongful conduct relates to the requested relief. *See Collins v. Davis*, 68 N.C. App. 588, 592–93, 315 S.E.2d 759, 762 (1984); *Shaw v. Gee*, 2018 NCBC LEXIS 109, at *17 (N.C. Super. Ct. Oct. 19, 2018). Moody's alleged coverup relates to Vanguard's claims of disloyalty, not to his request for advancement. If an official's alleged misconduct amounted to unclean hands, it "would turn every advancement case into a trial on the merits of the underlying claims," contrary to the nature and purpose of advancement. *Reddy*, 2002 Del. Ch. LEXIS 69, at *28–29.

29. Vanguard may well prove that Moody breached the operating agreement and his duties to the company. For purposes of this motion, the Court assumes that he did. Taking those allegations as true, the upshot is that Moody might not be entitled to indemnification at the end of the case and that he might have to repay expenses advanced to him just as he said he would in the undertaking. But it is not a defense to the obligation to advance expenses in the first place.

## C. Advancement and Moody's Counterclaims

30. The pleadings establish Moody's right to advancement, and Vanguard has not put forward any defense germane to that issue. The operating agreement therefore requires Vanguard to advance all expenses incurred "in defending" this action. (*See* Operating Agrmt. § 3.7(b).) Moody argues, and Vanguard disagrees, that this includes expenses incurred to litigate his counterclaims. (*See* Br. in Supp. 20, ECF No. 79.)

31. Citing the same Delaware case law, both sides agree that "defending" can include asserting counterclaims. Few counterclaims are truly defensive in character, though. The Delaware Supreme Court opened the door to advancement for compulsory counterclaims, observing that they arise out of the same transaction as the original claims, are naturally "part of the same dispute," and might "defeat, or offset," the original claims. *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 824 (Del. 1992). "In other words, a counterclaim fits within the 'in defending' language if it defends the corporate official by directly responding to *and* negating the affirmative claim." *Zaman*, 2008 Del. Ch. LEXIS 60, at *122; *see also Sun-Times Media Grp., Inc. v. Black*, 954 A.2d 380, 397 (Del. Ch. 2008).

32. Most of Moody's counterclaims do not directly respond to the claims asserted against him. He alleges, for example, that Vanguard refused to pay him for accrued vacation days as required by his employment agreement. (*See* Defs.' Am. Countercl. ¶¶ 140–41.) That claim has nothing to do with the self-dealing and disloyalty alleged against Moody. At the hearing, his counsel agreed as much.

33. Moody's other counterclaims also appear to be unrelated to the original claims. He alleges that Vanguard denied his request to inspect its books, breached a profit-sharing agreement, and breached implied covenants of good faith and fair dealing in his various employment-related agreements. (*See* Defs.' Am. Countercl. ¶¶ 115, 132, 147.) These claims do not directly respond to any of the allegations against Moody. And if he is successful, they would not "operate to defeat the affirmative claims against" him. *Zaman*, 2008 Del. Ch. LEXIS 60, at *122.

34. Moody makes no serious attempt to show otherwise. Rather, he seems to contend that it will be hard to disentangle expenses for any given claim because of the all-encompassing, "scorched-earth litigation strategy" taken by Vanguard. (Br. in Supp. 20.) How to treat specific invoices and line entries—that is, whether they go to advanceable or nonadvanceable claims, or to a bit of both—is a question for another day. For now, limited to the pleadings, the Could decides only whether the counterclaims are advanceable. The counterclaims based on Moody's informational rights, vacation days, and profit-sharing are not advanceable under any reasonable interpretation of "defending" in section 3.7(b).

35. That leaves the indemnification and advancement counterclaims, which neither side directly addresses. Officials "who successfully prosecute an advancement suit are generally entitled to an appropriate award of fees for the expenses incurred in litigating the suit, unless the parties have agreed otherwise." *Thompson v. ORIX USA Corp.*, 2016 Del. Ch. LEXIS 84, at *19 (Del. Ch. June 3, 2016); *accord Nielsen v. EBTH, Inc.*, 2019 Del. Ch. LEXIS 1291, at *38 (Del. Ch. Sept.

30, 2019). The rationale for this rule, at least in the LLC context, is based on the freedom of contract. Members of an LLC can tailor the operating agreement as desired, including by allocating the risk of a dispute about advancement to the official rather than the company. When the members agree to advance expenses to the outer limit, the risk goes to the company, and relief would be less than complete if the official had to bear the expense of holding the company to its promise. *See, e.g.*, *Tulum Mgmt. USA LLC v. Casten*, 2015 Del. Ch. LEXIS 308, at *8–9 (Del. Ch. Dec. 23, 2015) (allowing fees for advancement when operating agreement required advancement "to the fullest extent provided or permitted by" law).

36.    Vanguard's operating agreement does not exclude fees for pursuing advancement. It requires advancement of "all expenses" and "[t]o the maximum extent permitted by law." (Operating Agrmt. §§ 3.7(a), (i).) The Court is not aware of any law that would limit Moody's right "to recover his legal fees incurred in seeking advancement" and therefore concludes that he is entitled to do so. *Tulum Mgmt. USA*, 2015 Del. Ch. LEXIS 308, at *9.

### D. Procedural Matters

37.    Finally, Vanguard lodges a procedural objection. In *Wheeler*, an aggrieved company official sought advancement through a motion for preliminary injunction, which the Court denied because he had not shown a threat of irreparable harm. *See Wheeler*, 2018 NCBC LEXIS 156, at *42–52. Vanguard contends that Moody's request for immediate advancement is a disguised motion for a preliminary injunction. (*See* Opp'n 20–21.)

38. This misunderstands the distinction between temporary and final relief and draws the wrong lessons from *Wheeler*. The purpose of a preliminary injunction is to preserve the status quo pending a final resolution of the merits. *See A.E.P. Indus., Inc. v. McClure*, 308 N.C. 393, 400, 302 S.E.2d 754, 759 (1983). It is extraordinary relief, requiring litigants to take action or refrain from action, under penalty of contempt, before liability is established and judgment entered. The risk of error is higher in that prejudgment posture, dealing as it does with probabilities rather than established fact. *Wheeler*'s denial of temporary, prejudgment relief faithfully applied these settled principles.

39. By contrast, entry of judgment on the pleadings is a final decision on the merits. Its purpose is to allow early and efficient resolution of disputes when discovery would be of no use. Most cases turn on contested facts and are not suited to early relief. But there is no reason to delay judgment when, giving every advantage to the nonmoving party, the pleadings establish all the pertinent facts and leave room for only one outcome. *Wheeler* does not address, much less caution against, summary adjudication of advancement claims, which the Court has shown a willingness to do when applying the law of other States. *See Islet Scis., Inc. v. Brighthaven Ventures, LLC*, 2017 NCBC LEXIS 3, at *16–22 (N.C. Super. Ct. Jan. 12, 2017) (applying Nevada law and granting Rule 12(c) motion in advancement dispute).

40. Vanguard correctly observes that the pleadings do not establish the amount of its obligation. But all that is at issue at this moment is whether Vanguard *has* an obligation to advance expenses. It does, for all the reasons discussed above. The onus

is now on the parties and their counsel to confer in good faith about the expenses that Moody has incurred. If they cannot agree, the Court will have to decide those disputes with a more complete record. The potential for future disputes, though, is no reason to postpone a decision on the merits.

41. Indeed, Vanguard's position, if accepted, would make North Carolina an outlier. Courts around the country routinely decide advancement disputes in summary fashion. This is because "[a]dvancement cases are particularly appropriate for resolution on a paper record . . . ." *DeLucca v. KKAT Mgmt., LLC*, 2006 Del. Ch. LEXIS 19, at *20 (Del. Ch. Jan. 23, 2006). With rare exception, the right to advancement depends only on the pleadings that allege misconduct by the official and the contract that defines the right. Delay would serve no useful end but would threaten to "render the right meaningless." *United States v. Stein*, 452 F. Supp. 2d 230, 272 (S.D.N.Y. 2006). In Delaware and elsewhere, courts apply ordinary rules of civil procedure—most commonly summary judgment but also judgment on the pleadings—to expedite decisions when appropriate. *See, e.g.*, *Mitchell Co. v. Campus*, 2009 U.S. Dist. LEXIS 16694, at *2 (S.D. Ala. Mar. 3, 2009) (summary judgment); *Morgan v. Grace*, 2003 Del. Ch. LEXIS 113, at *3–4 (Del. Ch. Oct. 29, 2003) (same); *see also Freeman Family LLC v. Park Ave. Landing LLC*, 2019 Del. Ch. LEXIS 149, at *2–3 (Del. Ch. Apr. 30, 2019) (judgment on the pleadings). The Court sees no reason to take a novel and different approach here.

42. Although advancement has been the subject of few North Carolina cases, this will not be the last. To ensure that an advancement dispute receives a full, fair,

and expeditious hearing, litigants should bring it to the Court's attention in their case management report and at the case management conference. That would allow the Court to create a case management schedule that accounts for early motions practice while giving each side an opportunity to address, among other things, the need for limited discovery and other matters that might cause delay.

## III.
## CONCLUSION

43. For all these reasons, the Court **GRANTS** in part Moody's motion for judgment on the pleadings. Moody is entitled to advancement for all claims asserted against him and for his own counterclaims for advancement and indemnification. He is not entitled to advancement for his other counterclaims.

44. No later than August 25, 2020, counsel shall meet and confer in good faith to determine the amount of advanceable expenses incurred by Moody to date and to establish a procedure for ongoing advancement. If disputes arise, Moody may file a motion for payment of advanceable expenses with appropriate supporting materials on or before September 8, 2020, and Vanguard may file objections within fourteen days of any motion. These briefs shall be limited to 2,500 words.

**SO ORDERED**, this the 4th day of August, 2020.

/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
for Complex Business Cases